Filed 7/1/26  P. v. Meraz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085864 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1901774) |
| ALFONSO GONZALEZ MERAZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Samah Shouka, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Patricia Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene Sevidal, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Alfonso Gonzalez Meraz of 11 sexual abuse and kidnapping offenses for acts he committed against Jane Doe when she was in elementary school.  On appeal, he contends the trial court erred in failing to instruct the jury on a lesser included offense with respect to his convictions for forcible lewd act and the evidence is insufficient to support his conviction for aggravated kidnapping.  He also asserts his sentences for forcible lewd act violate the ex post facto clause and his sentence for aggravated kidnapping should be modified and stayed.  In addition, he contends the trial court's order for HIV/AIDS testing is not supported by the requisite probable cause, and a clerical error in his abstract of judgment must be corrected.  We agree with Meraz as to his instructional error and ex post facto claims and remand for further proceedings, and thus we do not address his claims of error with respect to his sentence for aggravated kidnapping, the HIV/AIDS testing order, and the abstract of judgment.  We reject Meraz's substantial evidence claim regarding his aggravated kidnapping conviction.  Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Charges, Jury Verdicts, and Sentencing*

The People charged Meraz with 11 counts:  four counts of sexual intercourse with a person 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (a); counts 1–3, 5); one count of aggravated kidnapping (§ 209; count 4); two counts of oral copulation with a person 10 years of age or younger

---

[1]     Further unspecified statutory references are to the Penal Code.

2

(§ 288.7, subd. (b); counts 6–7), and four counts of committing a forcible lewd act on a child under 14 years of age (§ 288, subd. (b)(1); counts 8–11).  The People also alleged two aggravating factors for purposes of sentencing, i.e., Jane was particularly vulnerable and Meraz took advantage of a position of trust and confidence to commit the crimes.  (Cal. Rules of Court, rule 4.421(a)(3) & (11).)

The jury convicted Meraz on all counts.  At a bifurcated bench trial, the trial court found true both aggravating factors.

The trial court sentenced Meraz to an aggregate prison term of 40 years plus 137 years to life, comprised of the following consecutive terms:  four 10-year terms on counts 8 through 11; four terms of 25 years to life on counts 1–3 and 5; one term of seven years to life on count 4; and two terms of 15 years to life on counts 6–7.  We summarize the trial evidence next.

## II.

### *The Prosecution's Case*

Jane Doe was born in 2003.  She lived in Coachella with her mother (Mother), older sister, younger brother, and maternal grandmother.  Meraz was Mother's boyfriend, and he moved into the family home sometime during Jane's early years of elementary school.  Shortly after Meraz moved in, Jane began sleeping in the same bed with him and Mother.  A few months later, Meraz began sexually abusing Jane.

One morning, while Mother was in the bathroom getting ready for work, Jane awoke to the feeling of Meraz's hand on her buttocks over her clothing.  She turned to look at Meraz, prompting him to turn away and stop touching her.  She went back to sleep, but Meraz put his hand on her

3

buttocks again. Again, she turned to look at him and, again, he turned away.[2]

In the following years, Meraz committed multiple additional lewd acts against Jane.[3]

Over time, Meraz's abuse escalated. He engaged in sexual intercourse with Jane once or twice a week, usually in Mother's room when Mother was at work. One morning, when Jane's sister was not home and Jane was asleep in bed with Meraz and Mother, Meraz began to initiate sexual contact with Jane. He then grabbed her arm and led her to her sister's empty bedroom. Once they were alone in the other room, Meraz proceeded to engage in sexual intercourse with her.[4] Then they returned to Mother's room where Mother was still asleep.

Mother and Meraz separated in 2015 and Meraz moved out of the home. After he moved out, Mother reported the abuse to the police but it did but it did not result in Meraz's arrest or charges being filed. Mother and Jane made another police report in 2019, when Jane was a sophomore in high school. This second report led to Meraz's arrest.

---

[2]    This first incident formed the basis of the charge of forcible lewd act in count 8.

[3]    Three of these acts formed the bases of the charges of forcible lewd act in counts 9 through 11.

[4]    These acts formed the bases for the charge of aggravated kidnapping in count 4.

DISCUSSION

I.

*The Trial Court Erred by Failing to Instruct on the Lesser Included Offense of*
*Nonforcible Lewd Acts as to Count 8*

As stated, Meraz was convicted of committing a forcible lewd act on Jane pursuant to section 288, subdivision (b)(1), as charged in count 8. He contends the trial court committed reversible error as to this conviction by failing to instruct the jury on nonforcible lewd act pursuant to section 288, subdivision (a), as a lesser included offense.[5] We agree that the trial court erred by failing to instruct the jury on the lesser included offense as to this count and further find that the error was not harmless.

---

[5] Meraz generally argues the trial court erred by failing to instruct on the lesser included offense as to each of the four lewd acts charged in counts 8 through 11. But he offers no substantive argument as to counts 9 through 11. Consequently, he has forfeited his claim as to counts 9 through 11 by failing to adequately develop his argument. (See *People v. Hardy* (1992) 2 Cal.4th 86, 150 [declining to address argument where appellant failed to "expand on the issue with either argument or citation to relevant authority"]; *People v. Ramirez* (2024) 104 Cal.App.5th 315, 329–330 [defendant forfeited an argument by not citing "any relevant legal authority to support this claim" or "develop[ing] a cogent legal argument"].) We recognize that, in his reply brief, Meraz attempts to further develop his claim as to counts 9 through 11. But he has not stated any reason for failing to present these arguments earlier and "points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1059–1060 [cleaned up].) Regardless, we would reject Meraz's claim on the merits as to counts 9 through 11 because any error in failing to instruct on the lesser included offense as to these counts was harmless given evidence that Meraz committed these offenses by means of duress.

5

A.    *Additional Background*

At trial, when the parties discussed jury instructions with the court, Meraz's counsel stated they previously discussed lesser included offenses in chambers and the court stated it would give "the lessers sua sponte." Counsel stated she was submitting to the trial court's discretion as to which lesser included offense instructions the court was required to issue sua sponte. She clarified that she was "not inviting error by requesting sua sponte instructions."[6]

Relevant here, the court then instructed the jury pursuant to CALCRIM No. 1111, the model instruction on the crime of forcible lewd act under section 288, subdivision (b)(1), as charged in counts 8 through 11.[7]

---

[6]    The Attorney General argues counsel invited any instructional error by "submit[ing] to, but . . . not comment[ing] on, the lesser included offenses when asked, and present[ing] an entirely different defense than non-forcible lewd and lascivious acts." In support of this argument, the Attorney General cites authority for the proposition that an instructional error is invited due to a tactical strategy where "defense counsel discouraged the trial court from providing a lesser included instruction . . . because it conflicted with the defense theory of the case." Here, Meraz's counsel did not discourage the trial court from issuing any lesser included offense instruction, for tactical reasons or otherwise. Rather, she acknowledged the court's sua sponte duty to instruct on all applicable lesser included offenses and made a conscious effort to avoid inviting error by requesting a particular sua sponte instruction while failing to request others. On this record, we cannot conclude counsel made a tactical decision not to request an instruction on the lesser included offense of nonforcible lewd act and, thus, we do not find counsel invited error.

[7]    CALCRIM No. 1111 reads, in relevant part:
> "The defendant is charged [in Count ___] with a lewd or lascivious act by force or fear on a child under the age of 14 years [in violation of Penal Code section 288[,subdivision](b)(1)].

The court further instructed the jury that a lewd act is forcible for purposes of section 288, subdivision (b)(1), if "the defendant used force, duress, or fear of immediate and unlawful bodily injury to the child or someone else."[8] The court also instructed the jury on attempted forcible lewd act as a lesser included offense to the crime of forcible lewd act as charged in counts 8 through 11.[9] The court did not, however, instruct the jury on the lesser included offense of nonforcible lewd act under section 288, subdivision (a).

"To prove that the defendant is guilty of this crime, the People must prove that:
"*<Alternative 1A—defendant touched child>*
[1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;]
"[¶] . . . [¶]
"2. In committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else;
"3. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of (himself/herself) or the child;
"AND
"4. The child was under the age of 14 years at the time of the act."

[8] When the trial court read CALCRIM No. 1111 to the jury, it omitted from the second element the potential use of duress to accomplish the crime, but it read for the jury the definition of duress. The written copy of the instruction the court provided to the jury read, in relevant part: "In committing the act, the defendant used *force, duress, or fear* of immediate and unlawful bodily injury to the child or someone else." (Italics added.)

[9] When instructing the jury as to lesser included offenses, the trial court stated, "Now, I will explain to you the crimes affected by this instruction." But it failed to continue reading that portion of the instruction. The written copy of the instruction provided to the jury read: "Now I will explain to you the crimes affected by this instruction: Simple Assault and Simple Battery

B.    *Applicable Law and Standards of Review*

"[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." (*People v. Lewis* (2001) 25 Cal.4th 610, 645.)  "Substantial evidence is evidence sufficient to deserve consideration by the jury, that is, evidence that a reasonable jury could find persuasive."  (*Ibid.* [cleaned up])

" 'On appeal, we review independently the question whether the trial court failed to instruct on a lesser included offense.' "  (*People v. Avila* (2009) 46 Cal.4th 680, 705.)  Where a trial court has erred in failing to instruct on a lesser included offense, we review for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818.  (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)  Under this standard, the failure to instruct on a lesser included offense is not subject to reversal unless " 'it is reasonably probable a more favorable result would have been obtained absent the error.' "  (*Ibid.*)

Nonforcible lewd act under section 288, subdivision (a), is a lesser included offense of forcible lewd act under section 288, subdivision (b)(1). (See *People v. Chan* (2005) 128 Cal.App.4th 408, 421 [recognizing nonforcible lewd act under section 288, subdivision (a) is a lesser included offense of forcible lewd act under section 288, subdivision (b)(1)].)  The crimes are distinguishable in that forcible lewd act requires the defendant to have

---

are lesser included offenses to the crimes alleged in Count 1, 2, 4 and 5. Kidnapping and False Imprisonment are lesser included offenses to the crime alleged in Count 4.  Simple Assault and Simple Battery are lesser included offenses to the crime charged in Counts 6 and 7.  Attempted lewd and lascivious acts are lesser included offenses to the crimes charged in Counts 8, 9, 10, and 11."

committed the crime by means of force, violence, duress, menace, or fear. (See *People v. Griffin* (2004) 33 Cal.4th 1015, 1026.)

Here, the trial court instructed the jury it could find Meraz guilty of forcible lewd act in count 8 if it found he committed the offense by means of force, duress, or fear. In this context, force means " 'physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' " (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13, disapproved on another ground in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 (*Soto*).) Fear has been defined as "(1) A feeling of alarm or disquiet caused by the expectation of danger, pain, disaster, or the like; terror; dread; apprehension and (2) Extreme reverence or awe, as toward a supreme power." (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 939–940 [cleaned up].) And " '[d]uress' as used in this context means 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*Cochran,* at p. 13.) " 'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.' " (*Id.* at pp. 13–14.) "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family." (*Id.* at p. 14.)

C.    *Analysis*

With respect to count 8, Jane testified that she was asleep in bed next to Meraz when she awoke to the feeling of his hand on her buttocks over her clothing. When Jane turned to look at Meraz, he stopped. After Jane went

9

back to sleep, this same series of acts repeated one more time. This testimony shows Meraz did not apply any force to Jane beyond that required to place his hand on her, and he immediately stopped when she looked at him. He did not preface this touching with any threats or acts of intimidation. Similarly, during the incident, he did not say anything to Jane, apply physical pressure against her to suggest she had to submit to his advance, or commit any other acts against her.

We recognize there was testimony at trial that could have supported a finding that Meraz manipulated Jane or made her fearful. Specifically, witnesses testified Meraz was controlling with family members, Jane was afraid of him, he would not let her sleep in any other bedroom in the house, and he spoiled her. But none of the witnesses provided a timeframe with respect to this testimony and did not suggest these things occurred before the first incident of abuse underlying count 8. On this record, there is simply no evidence that Meraz employed the requisite force, duress, or fear to commit the forcible lewd act charged in count 8. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319–1321 [finding no evidence of force or fear and insufficient evidence of duress, where defendant lewdly touched victim but "did not grab, restrain or corner" her, even though he was older and larger than the victim, he was her natural father, and she was generally afraid of him]; see *Cochran, supra,* 103 Cal.App.4th at pp. 15–16 [holding duress can be based on psychological coercion alone and finding sufficient evidence of duress where nine-year-old victim was molested by her father in family home but evidence also showed the defendant "direct[ed] and coache[d] the victim what to do" and gave her gifts and told her not to tell anyone about the abuse].)

10

Given the lack of evidence that Meraz committed count 8 by means of force, duress, or fear, we reject the Attorney General's argument that any instructional error was harmless given the "overwhelming evidence" of Meraz's guilt of the crime of forcible lewd act. Neither are we persuaded by the Attorney General's argument that any error in failing to instruct on the lesser included offense was harmless because the trial court instructed the jury on the crime of attempted forcible lewd act, a different lesser included offense, and the jury nevertheless convicted Meraz of the completed offense. As the jury was instructed, to find Meraz guilty of attempted forcible lewd act, it had to find (1) he committed an act that would have resulted in a completed forcible lewd act "if some circumstance outside the plan had not interrupted the attempt" and (2) he intended to commit a forcible lewd act. But, for the reasons we have explained, the evidence did not show Meraz committed an act that would have resulted in a completed forcible act but for some intervening circumstance. In fact, Meraz completed the act of touching underlying count 8 and that act did not meet the elements of the crime of forcible lewd act under section 288, subdivision (b)(1). And, just as there is no evidence that Meraz employed force, duress, or fear to complete the touching underlying count 8, there is no evidence he intended to use the requisite force, duress, or fear against Jane in this instance.

For these reasons, the trial court erred in failing to instruct on the lesser included offense of nonforcible lewd act as to count 8 and the error was prejudicial. Consequently, we must reverse the judgment and conviction for forcible lewd act under section 288, subdivision (b)(1), as charged in count 8. Under settled law, the judgment will be modified to reflect a conviction for nonforcible lewd act under section 288, subdivision (a), unless the People

11

elect to retry Meraz on the greater charge and are successful.  (*People v. Edwards* (1985) 39 Cal.3d 107, 118.)

II.

*Meraz's Sentences on Counts 8 and 10 Violate the Ex Post Facto Clause*

Meraz argues that his sentences for forcible lewd act violate the ex post facto clause because the prosecutor did not establish that the acts underlying these counts occurred after the effective date of the law under which the trial court sentenced him.  We agree as to counts 8 and 10.  But we reject the claim as to counts 9 and 11.  Meraz admits the record shows the act underlying count 9 occurred after the effective date of the sentencing law and thus the sentence on count 9 does not violate the ex post facto clause.  As we shall explain, the evidence at trial also showed the act underlying count 11 occurred after the sentencing law was revised.

"The federal and state prohibitions against ex post facto laws apply to any statute that punishes as a crime an act previously committed which was not a crime when done or that inflicts greater punishment than the applicable law when the crime was committed."  (*People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1178.)  "On September 9, 2010, the Governor signed into law the Chelsea King Child Predator Prevention Act of 2010 (Chelsea's Law).  Chelsea's Law significantly increases the penalties for sex crimes against minors by imposing longer determinate sentences, indeterminate sentences for some crimes, and longer parole restrictions.  As amended, section 288[, subdivision] (b)(1) now prescribes a sentencing range of five, eight, or 10 years for the crime of lewd or lascivious acts against a child under 14 committed by use of force, violence, duress, menace, or fear."  (*Soto, supra*, 51 Cal.4th at p. 237, fn. 4 [citations omitted].)

12

It is "the prosecution's responsibility to prove to the jury that the charged offenses occurred on or after the effective date of the statute providing for the defendant's punishment. When the evidence at trial does not establish that fact, the defendant is entitled to be sentenced under the formerly applicable statutes even if he raised no objection in the trial court." (*People v. Hiscox* (2006) 136 Cal.App.4th 253, 256 (*Hiscox*).) And, where the prosecutor failed to establish at trial when the charged acts occurred, "[i]t would be inappropriate for [an appellate court] to review the record and select among acts that occurred before and after that date, or to infer that certain acts probably occurred after that date." (*Id.* at p. 261.)

In counts 8 through 11, the People charged Meraz with forcible lewd acts under section 288, subdivision (b)(1), for acts that allegedly occurred between June 2009 and June 2014. The jury was not tasked with making a finding as to exactly when the acts underlying these counts occurred. For purposes of trial and sentencing, however, the People and the trial court accepted that the abuse started as early as when Jane was six years old, or between June 2009 and June 2010. After the jury convicted Meraz on all three of these counts, the trial court imposed consecutive 10-year upper term sentences pursuant to section 288, subdivision (b)(1), as amended by Chelsea's Law.

Jane's testimony, standing alone, supports the application of Chelsea's Law to impose the harsher sentences. Specifically, she testified consistently and convincingly that she was eight years old when Meraz began abusing her. This would mean all of the acts underlying the charges against Meraz occurred after Jane's eighth birthday in June 2011, and thus after Chelsea's Law took effect in September 2010. But, under *Hiscox*, we may not choose to rely only on Jane's testimony. (*Hiscox, supra*, 136 Cal.App.4th at p. 256.)

13

Here, other trial testimony created ambiguity as to when the relevant acts occurred and consequently we are not permitted to rely on Jane's testimony alone. (*Ibid.* [appellate court cannot infer when acts probably occurred].)

With respect to count 8—which related to the first time Meraz touched Jane on the buttocks—Jane testified the incident occurred a few months after Meraz moved into the family home. And, crucially, Mother testified she believed Meraz moved into the home sometime in 2009. It is plausible then that the acts underlying count 8 pre-dated the September 2010 effective date of Chelsea's Law.

As to count 10—which related to Meraz putting his mouth on Jane's breast—there was no specific evidence at trial regarding when this took place. Jane testified at trial that she did not remember Meraz putting his mouth on her breast. And, although the People played for the jury a videorecording of Jane's forensic interview in which she said Meraz sucked on her breasts "a few times," this evidence did not establish the relevant timeframe for this conduct. But, again, according to other testimony, Meraz began abusing Jane a few months after moving into the home and he moved in sometime in 2009. This record does not foreclose the possibility that the act underlying count 10 occurred before Chelsea's Law became effective in September 2010.

On the other hand, as to count 9, as we mentioned, Meraz concedes the record shows the act underlying this count occurred when Jane was between eight and 10 years old and, thus, this sentence does not violate the ex post facto clause.

And, as to count 11—related to Meraz kissing Jane's neck and leaving a hickey—the only evidence providing a timeframe for this act supported a finding that it occurred after the effective date of Chelsea's Law. Jane and

14

Mother did not provide a specific timeframe for when this act occurred, but Jane's grandmother testified she saw the hickey around the time when Jane was 11 years old. This would have been between June 2014 and June 2015, well after Chelsea's Law took effect.

In sum, as to counts 8 and 10, the prosecution failed to present unambiguous evidence that the acts underlying these counts occurred after Chelsea's Law took effect. Given the ambiguity, the trial court was not permitted to impose the harsher penalty under the revised law as to these counts. (*Hiscox, supra*, 136 Cal.App.4th at p. 256.) Meraz's 10-year sentences on counts 8 and 10 therefore violate the ex post facto clause and resentencing is required on these counts. At resentencing, as to counts 8 and 10, the court must apply the sentencing provisions applicable before Chelsea's Law.

III.

*Meraz's Aggravated Kidnapping Conviction in Count 4 is Supported by Substantial Evidence*

Meraz was convicted of aggravated kidnapping to commit rape and/or oral copulation under section 209, subdivision (b), as charged in count 4. He contends this conviction is not supported by substantial evidence because his movement of Jane was not sufficient to meet the asportation element of this offense. We reject this claim.

When considering a challenge to the sufficiency of the evidence to support a conviction, we view the record in the light most favorable to the judgment to determine whether it contains substantial evidence so that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Collins* (2025) 17 Cal.5th 293, 307; *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)

15

"[A]ggravated kidnapping requires movement of the victim that is not merely incidental to the commission of the underlying crime and that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself." (*People v. Martinez* (1999) 20 Cal.4th 225, 232 (*Martinez*), overruled on another ground in *People v. Fontenot* (2019) 8 Cal.5th 57; §§ 209, subd. (b), 209.5.) "The two prongs of aggravated kidnapping are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim." (*Martinez,* at p. 236.)

" '[T]here is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.' " (*Martinez, supra*, 20 Cal.4th at p. 233.) Rather, "[i]n determining whether the movement is merely incidental to the [underlying] crime . . . the jury considers the scope and nature of the movement. This includes the actual distance a victim is moved." (*Ibid*. [cleaned up]) "In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 .)

The second, interrelated, prong of asportation " 'refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in [the underlying crime]' " and requires " 'consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.' " (*Martinez, supra*, 20 Cal.4th at p. 233.) "[T]he increased risk may be of either physical or psychological harm." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 984

16

(*Robertson*).) " 'The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased.' " (*Martinez,* at p. 233.)

Here, Meraz's movement of Jane from Mother's room, where Mother was asleep in the bed, into her sister's empty bedroom is sufficient to meet the asportation element to support Meraz's conviction for aggravated kidnapping. First, the movement was not merely incidental to committing rape and/or oral copulation, as Meraz could have committed either of those offenses in Mother's room, but at greater risk of detection. (See *People v. Salazar* (1995) 33 Cal.App.4th 341, 347 [evidence of asportation sufficient where defendant could have raped victim where he found her and movement "was not necessarily related to the rape crime itself" but, rather, could have been deemed "an essential part of [the defendant's plan to avoid detection and to make the crime easier to commit]".) Second, the movement increased the risk of physical harm to Jane. When Meraz moved Jane away from the room occupied by Mother and into an empty room, she became more vulnerable to any form of abuse Meraz chose to perpetrate. It does not matter that Meraz did not take advantage of the opportunity to commit additional crimes. (*Martinez, supra*, 20 Cal.4th at p. 233.) In addition, the movement decreased the risk both that Mother would detect the assault and that Jane might escape. Last, movement to the empty room, where Meraz was in complete control over Jane despite Mother's presence nearby, increased the risk of psychological harm to Jane. (*Robertson, supra*, 208 Cal.App.4th at p. 984 [increased risk can be of either physical or psychological].)

Under the circumstances present here, Meraz's movement of Jane from Mother's occupied bedroom to her sister's empty bedroom was sufficient to

17

meet the asportation requirement for aggravated kidnapping. (*Robertson, supra,* 208 Cal.App.4th at pp. 985–986 [finding movement of victim from front to back of garage sufficient to support asportation for kidnapping to commit rape]; (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168–169 [dragging a store clerk nine feet from the front counter of a store to a small back room for the purpose of raping her was sufficient to support aggravated kidnapping conviction].)

## IV.

### *We Need Not Reach Meraz's Remaining Sentencing Error Claims*

Because we conclude that the judgment must be reversed in part and this action must be remanded to the trial court for further proceedings, Meraz will ultimately be entitled to full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893; see *People v. Navarro* (2007) 40 Cal.4th 668, 681 ["Although the Court of Appeal's prior remand order was for resentencing 'on the modified convictions only,' we believe a remand for a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances."].) Accordingly, we need not reach Meraz's claims of error with respect to his sentence for aggravated kidnapping, the HIV/AIDS testing order, and the abstract of judgment because Meraz can present his arguments to the court which may exercise its discretion anew.

## DISPOSITION

The judgment is affirmed in part and reversed in part, and this matter is remanded to the trial court for further proceedings. On remand, the trial court shall modify the judgment as to count 8 to reflect a conviction for nonforcible lewd act under section 288, subdivision (a), unless the People elect to retry Meraz on the greater charge and are successful. Thereafter, the trial court shall conduct a full resentencing hearing, at which, as to counts 8 and 10, it shall apply the sentencing provisions applicable to those offenses before Chelsea's Law.

DO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

19